STATE OF NEW HAMPSHIRE

ROCKINGHAM                                                                SUPERIOR COURT

Gemma Waite

v.

Bottomline Technologies (DE), Inc.

Case No. 218-2021-CV-00141

**COMPLAINT**
**JURY TRIAL DEMANDED**

### Parties

1. The Plaintiff, Gemma Waite, resides at 9 Squire Way, Exeter, New Hampshire 03833.

2. Defendant Bottomline Technologies (DE), Inc. ("Bottomline"), is a foreign profit corporation registered to do business in New Hampshire. The principal office address is 325 Corporate Drive, Portsmouth, New Hampshire 03801. Bottomline's Registered Agent is CT Corporation System, 2-1/2 Beacon Street, Concord, New Hampshire 03301.

### Jurisdiction and Venue

3. Ms. Waite's claims arise under N.H. RSA 354-A, Title VII, §6(b) of the Fair Labor Standards Act (The Equal Pay Act), New Hampshire's Equal Pay Act, RSA 275:37, *et. seq.*, and the Family and Medical Leave Act (FMLA), 29 C.F.R. §825.

4. Upon information and belief, at all times relevant hereto, Bottomline has engaged in an industry affecting commerce and had more than 15 employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

5. Upon information and belief, at all times relevant hereto, Bottomline had 50 or more employees in 20 or more workweeks in the current or preceding calendar year.

6. Venue is proper, as Bottomline is a foreign profit corporation registered to do business in New Hampshire, and the unlawful acts complained of were committed within the State of New Hampshire.

7. On or about August 3, 2020, Plaintiff filed a Charge of Discrimination with the New Hampshire Commission for Human Rights and the Equal Employment Opportunity Commission, in accordance with the requirements of 42 U.S.C. 2000(e) - 5(b) and (e).

8. Plaintiff's Charge was filed with the New Hampshire Commission for Human Rights and the Equal Employment Opportunity Commission within 180 days after the unlawful employment acts were committed.

9. On February 5, 2021, the Equal Employment Opportunity Commission issued Plaintiff a Notice of Right to Sue with respect to her charges of discrimination, thus satisfying the procedural prerequisites established by 42 U.S.C. 2000(e) - 5(b) and (3). *See* Exhibit A, Notice of Right to Sue, attached hereto and incorporated herein by reference.

10. This Complaint is filed fewer than 90 days after receipt of the Notice of Right to Sue, dated February 5, 2021 (as attached).

11. Ms. Waite has consented to make a claim under the Fair Labor Standards Act. (See Exhibit B, Plaintiff's Consent Form).

## Facts

12. Gemma Waite worked for Bottomline as the Director of Marketing Communications from September 5, 2017 until June 25, 2020, when her employment was unlawfully terminated.

13. At the time of her termination, Ms. Waite earned $118,450 per year plus bonus and benefits, including health, dental and vision insurance, 401k, and a stock purchase program.

14. Upon information and belief, the male employee who previously performed the duties that Ms. Waite was hired to perform (and did perform) had a higher title and was paid more than Ms. Waite was paid throughout her employment.

15. From September of 2017 until Ms. Waite went on maternity leave in June of 2019, she was told repeatedly how much she had accomplished in her role.  Ms. Waite's supervisor, Christine Nurnberger, told Ms. Waite that she did not know what she would do without Ms. Waite.  Ms. Waite had not received any negative feedback, comments, or performance evaluations.

16. Ms. Waite received a very positive evaluation in July of 2018 (she believes it was erroneously dated 2019 in her personnel file).

17. After Ms. Waite disclosed that she was pregnant, in March of 2019, Ms. Waite told Ms. Nurnberger that she was suffering from pregnancy-related high blood pressure (that had caused her to be admitted to the hospital) and Ms. Waite requested that the CEO, Robert Eberle, not email her in the middle of the night/very early morning due to her concern about her health/pregnancy.

18. Ms. Nurnberger communicated Ms. Waite's request to the CEO.

19. Ms. Nurnberger then sent Ms. Waite an email starting with the phrase, "I don't mean to get your blood pressure up, but…."

20. Ms. Waite took FMLA-approved maternity leave from June 10, 2019 until September 2, 2019.

21. On August 27, 2019, Ms. Nurnberger invited Ms. Waite to go to lunch with her while Ms. Waite was still on maternity leave.

22. Ms. Waite went to lunch with Ms. Nurnberger on August 29, 2019.

23. During that lunch, Ms. Nurnberger told Ms. Waite that she was hiring someone into a new VP of Corporate Communications role and that Ms. Waite would report to that person.

24. Ms. Nurnberger told Ms. Waite that the new person would be responsible for the branding of Bottomline and would not be performing Ms. Waite's role.

25. In fact, Ms. Nurnberger said she still needed Ms. Waite to run the PR program.

26. Ms. Nurnberger said she was trying to "lighten [Ms. Waite's] load" because Ms. Waite now had a baby. Ms. Waite had not requested that her work be reduced and did not want it reduced.

27. During Ms. Waite's first week back to work after her maternity leave (she returned on September 3, 2019), Ms. Waite had a meeting with Ms. Nurnberger and asked more clarifying questions about the newly created position.

28. Ms. Waite told Ms. Nurnberger that it felt like she had been demoted.

29. Ms. Nurnberger replied by saying, "we just need someone who can handle Rob (the CEO), who has worked at a SaaS company before and who can stand up to him."

30. Ms. Nurnberger said it would probably have to be a man.

31. Ms. Waite then asked her why she was not considered for this position and that this job description looked very similar to the description for Ms. Waite's job when she was hired.

4

32. Ms. Nurnberger replied by falsely suggesting that Ms. Waite's performance had been "inconsistent."

33. Ms. Waite had not received criticism of her performance and she had just been out for three months on maternity leave.

34. Ms. Nurnberger also informed Ms. Waite at this point that she would no longer be responsible for Events as a function of her team and that they were "restructuring."

35. Ms. Nurnberger also informed Ms. Waite that she was moving Ms. Waite's Digital Content Manager, Colleen Poisson, into an Events Manager role.

36. The creation of the new position and change in Ms. Waite's duties resulted in her going from managing a team of four to a team of one or two.

37. Additionally, when Ms. Waite came back from maternity leave, she was still nursing her daughter, so she was using the pumping room at work.

38. On Ms. Waite's first day back, no one told her there was a calendar to sign up for times, so Ms. Waite ended up walking in on another colleague who was pumping.

39. The pumping room was filthy (stains on the carpet, thick dust everywhere) and there was no light switch, so the light was a glaring florescent light that was on at all times.

40. Ms. Waite wrote a long email to the Human Resources Department (which she also shared with Ms. Nurnberger) expressing her concerns and suggestions for improvement to the pumping room.

41. In October of 2019, Ms. Waite assisted Colleen Poisson in raising an internal complaint that involved pregnancy discrimination by Ms. Nurnberger.

42. Ms. Waite told Ms. Nurnberger that she had suggested that Ms. Poisson file a complaint with Human Resources.

43. Ms. Waite believes that Ms. Poisson and Ms. Waite experienced retaliation from Ms. Nurnberger after Ms. Poisson raised her complaint.

44. Between October and November 2019, the new VP of Corporate Marketing/VP Corporate Communications role was posted.

45. Ms. Waite was invited to participate in the interview process and all of the candidates interviewed were men.

46. According to a LinkedIn job post advertising the position, the new job offered salary of $200,000 to $260,000 plus bonus and benefits which far exceeded Ms. Waite's compensation, even though the duties were nearly identical to her duties.

47. John Stevens was hired for the new position in December of 2019 and began working on January 6, 2020.

48. When Mr. Stevens first started in his role, Ms. Waite continued to do her job as she had been doing and was still part of the Marketing Management/Leadership Team.

49. On March 13, 2020, the entire company went to remote working due to Covid-19.

50. In March and April 2020, Ms. Waite was working full-time and also co-parenting her daughter as her daycare was closed due to COVID-19.

51. Ms. Waite's partner was also working full-time, and they were juggling the childcare between them.

52. Ms. Waite was able to perform her work well during this time.

53. However, there were times when Ms. Waite was verbally berated by the CEO, even when she was performing tasks that he had directed her to do.

54. During that time, Ms. Waite was removed from the management team meetings and email threads with no formal communication as to why.

55. Ms. Waite was also removed from email threads and projects that she had previously led or been a part of.

56. Ms. Waite no longer had contact directly with the PR agency that she had managed for the past 18 months.

57. John Stevens took over all of these duties.

58. Mr. Stevens did not invite Ms. Waite to participate in meetings with her one remaining direct report, Germaine Lang.

59. In May 2020, Ms. Waite asked for a meeting with Human Resources.

60. Ms. Waite met with Jennifer Maddie and explained to her how she had been feeling, how she had been recently berated by the CEO, how she had no clear direction of her role, and how she was essentially exhausted.

61. Ms. Waite was told that the Employee Assistance Program was available to her and that Bottomline was too large for her to qualify for extended FMLA leave under the FFCRA, but that she could use her own personal, vacation and sick time to take time off.

62. On May 23, 2020, following this conversation with Human Resources, Ms. Waite had a conversation with John Stevens about how she was feeling and that she was thinking about using some of her personal and sick time to take one day off per week (using her accrued vacation and sick time) to help balance work and family due to COVID-19 until the beginning of July 2020.

63. Mr. Stevens responded by asking her if she wanted to be at Bottomline.

64. Ms. Waite replied, "yes, absolutely."

65. Mr. Stevens approved Ms. Waite's use of six (6) sick/vacation days for this purpose through the end of June as she had requested.

66. Mr. Stevens told Ms. Waite that there was "plenty of work to go around."

67. However, later that evening, Mr. Stevens sent Ms. Waite an email that outlined his new expectations for her, along with a series of assignments with due dates.

68. This appeared like an informal performance plan.

69. On May 24, 2020, following Ms. Waite's receipt of Mr. Stevens' email, she spent the day (which was a company holiday) fulfilling the new assignments.

70. Ms. Waite sent everything back to Mr. Stevens in an email with a reiteration of her commitment to Bottomline.

71. Ms. Waite received no negative feedback related to this completion of the additional duties or her general performance.

72. On June 25, 2020, Ms. Waite was invited to a meeting via Webex with Christine Nurnberger and Jennifer Maddie from Human Resources.

73. Ms. Nurnberger read a prepared statement about the company restructuring and that Ms. Waite's position was being eliminated.

74. Ms. Waite was the only person on the marketing team of approximately 50 people who was laid off as part of the "restructuring."

75. There were several new members of the team hired during COVID-19 who were not subject to layoff.

76. In addition, the entire Global Events team was kept on, even though the company was not doing any events at that time due to COVID-19.

77. Bottomline discriminated against Ms. Waite and created a hostile environment for her after she disclosed her pregnancy and when she returned from maternity leave.

78. Ms. Waite was essentially demoted and not considered for the new Vice President of Corporate Marketing/Communications role, despite her qualifications and experience, because of her FMLA leave, and/or her gender and pregnancy.

79. Upon information and belief, Bottomline paid a man who previously performed her duties more compensation despite the substantial similarity of the duties, due to gender discrimination.

80. In addition, Bottomline paid a man in the position of Vice President of Marketing/Communications approximately double Ms. Waite's compensation, despite the substantial similarity of the duties, due to gender discrimination.

81. Part of the gender discrimination that Ms. Waite experienced was unlawful disparate treatment due to her gender and caregiving responsibilities. *See* EEOC guidance https://www.eeoc.gov/laws/guidance/enforcement-guidance-unlawful-disparate-treatment-workers-caregiving-responsibilities#sexbased.

82. Specifically, Bottomline began subjecting Ms. Waite to less favorable treatment soon after it became aware that Ms. Waite was pregnant and after she assumed caregiving responsibilities.

83. Ms. Waite believes that Bottomline acted based on stereotypes of mothers not being as committed to their jobs after they have children.

84. The real reason for the termination of Ms. Waite's employment was unlawful pregnancy and gender discrimination and/or retaliation for her FMLA leave and/or for requesting reasonable accommodation of a medical condition related to her pregnancy and/or assisting an employee in raising her internal complaint of pregnancy/gender discrimination.

85. The unlawful discrimination and retaliation have caused Ms. Waite emotional and financial harm and continue to cause her such harm.

86. In addition, Ms. Waite has incurred, and will incur, attorneys' fees and costs.

87. Ms. Waite seeks all recoverable damages available, pursuant to Title VII, state and federal equal pay acts, N.H. RSA 354-A, and the FMLA for current and anticipated future losses, including, but not limited to, lost wages and benefits, future lost wages and benefits, compensatory damages, enhanced compensatory damages, liquidated damages, punitive damages, and attorneys' fees and costs.

### Count I – Gender Discrimination – N.H. RSA 354-A

88. Plaintiff re-alleges and hereby incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

89. As described above, Ms. Waite was subjected to discrimination on the basis of her gender by Bottomline.

90. In addition, Ms. Waite was subjected to discrimination for requesting reasonable accommodation of a pregnancy-related medical condition.

91. All of Bottomline's unlawful employment practices as described herein violated N.H. RSA 354-A.

92. As a direct and proximate result of the violation of the Plaintiff's rights secured under RSA 354-A, as stated herein, the Plaintiff has incurred damages in the form of lost wages and benefits, future lost wages and benefits, compensatory damages, enhanced compensatory damages, and attorneys' fees and costs.

**Count II – Gender Discrimination – Title VII**

93. Plaintiff re-alleges and hereby incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

94. As more particularly described in Count I above, Bottomline willfully violated, and continues to violate, Title VII, 42 U.S.C. §2000(e) *et seq.* by taking each of the adverse employment actions described in Count I against Ms. Waite on the basis of her gender and/or in retaliation for her support of another employee's complaint of gender discrimination, thereby acting with malice or with reckless indifference to Ms. Waite's federally- protected rights.

95. As a direct and proximate result of Bottomline's violation of the Plaintiff's rights secured under 42 U.S.C. §2000(e) *et seq.*, as stated herein, the Plaintiff has incurred damages in the form of lost wages and benefits, future lost wages and benefits, compensatory damages, punitive damages, and attorneys' fees and costs.

**Count III – Retaliation – NH RSA 354-A**

96. Plaintiff re-alleges and hereby incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

97. Ms. Waite was subjected to retaliation for supporting another employee raising a complaint of gender discrimination.

98. All of Bottomline's unlawful employment practices as described herein violated N.H. RSA 354-A.

99. As a direct and proximate result of the violation of the Plaintiff's rights secured under RSA 354-A, as stated herein, the Plaintiff has incurred damages in the form of lost wages and benefits, future lost wages and benefits, compensatory damages, enhanced compensatory damages, and attorneys' fees and costs.

### Count IV – Retaliation – Title VII

100. Plaintiff re-alleges and hereby incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

101. As more particularly described in Count I above, Bottomline willfully violated, and continues to violate, Title VII, 42 U.S.C. §2000(e) *et seq.* by taking each of the adverse employment actions described in Count I against Ms. Waite on the basis of her gender and/or in retaliation for her support of another employee's complaint of gender discrimination, thereby acting with malice or with reckless indifference to Ms. Waite's federally- protected rights.

102. As a direct and proximate result of Bottomline's violation of the Plaintiff's rights secured under 42 U.S.C. §2000(e) *et seq.*, as stated herein, the Plaintiff has incurred damages in the form of lost wages and benefits, future lost wages and benefits, compensatory damages, punitive damages, and attorneys' fees and costs.

### Count V – Section 16(b) of the Fair Labor Standards Act (The Equal Pay Act)

103. Plaintiff re-alleges and hereby incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

104. Ms. Waite brings this claim under §16(b) of the Fair Labor Standards Act (The Equal Pay Act) to recover wages due to her under the Fair Labor Standards Act ("FLSA") and an equal amount as liquidated damages.

105. Ms. Waite has filed the consents required by §16(b).  See Exhibit B.

106. As described above, at all times relevant hereto, Ms. Waite has been employed by the Defendant.

107. Bottomline has repeatedly and willfully violated and continues to violate §6(d) of the Fair Labor Standards Act (the equal pay provision of the Fair Labor Standards Act).

108. As described above, Bottomline has violated and continues to violate the FLSA by discriminating between employees on the basis of sex by offering and paying higher wages and benefits to male employees in the same establishment for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions.

109. As a direct and proximate result of Bottomline's violation of the Plaintiff's rights secured under the FLSA, as stated herein, the Plaintiff has incurred damages and seeks back pay with interest, an equal amount as liquidated damages, costs, and attorneys' fees.

### Count VI – Violation of New Hampshire Equal Pay Act – RSA 275:37, *et. seq.*

110. Plaintiff re-alleges and hereby incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

111. Bottomline violated and continues to violate RSA 275:37 when it discriminated on the basis of sex by paying Ms. Waite at a rate less than the rate paid to male employees for equal work that required equal skill, effort, and responsibility and was performed under similar working conditions.

112. Ms. Waite seeks to recover her unpaid wages as well as an equal amount of liquidated damages pursuant to RSA 275:39.

113. Finally, Ms. Waite seeks recovery of interest and her reasonable attorneys' fees and costs pursuant to RSA 275:53, III.

### Count VII- Violation of the Family and Medical Leave Act of 1993 – Discrimination, Interference and Retaliation

114. Plaintiff re-alleges and hereby incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

115. Ms. Waite was employed by Bottomline for more than 12 months prior to the time that she informed Bottomline that she was pregnant and would be requesting a maternity leave for the birth of her child and to care for the newborn child.   29 C.F.R. §825.110.

116. Ms. Waite had been employed by Bottomline for at least 1,250 hours of service during the 12-month period immediately preceding the time that she informed Bottomline of her intention to take a maternity leave.  29 C.F.R. §825.110.

117. Ms. Waite was employed by Bottomline at a work site where 50 or more employees were employed within 75 miles of that worksite.  29 C.F.R. §825.110.

118. Ms. Waite's requested maternity leave was authorized by the FMLA.  29 C.F.R. §825.112.

119. Ms. Waite's maternity leave was for the birth of her baby and to care for her newborn child.  29 C.F.R. §825.112.

120. Bottomline's actions after learning of Ms. Waite's pregnancy and request for maternity leave, and after she took FMLA leave, constituted an interference with Ms. Waite's maternity leave and retaliation in violation of the FMLA.  29 C.F.R. 825.220.

121.  As described above, from the time that Ms. Waite notified Bottomline of her intent to take maternity leave, she was treated negatively by Bottomline.

122. This negative treatment by Bottomline was in retaliation for Ms. Waite's notice of her intention to take FMLA-protected maternity leave and her taking of the leave.

123. Bottomline further discriminated against and/or retaliated against Ms. Waite on the basis of her FMLA-protected maternity leave in terminating her employment on June 25, 2020, in further violation of the FMLA.

124.   It was unlawful for Bottomline to discharge or in any other manner discriminate against Ms. Waite as a result of her need for a maternity leave, which was a protected FMLA leave.  29 C.F.R. §825.220.

125.   As a result of violation of the FMLA by Bottomline, Ms. Waite is entitled to relief including, but not limited to, back pay, front pay, lost benefits, interest on back and front pay, liquidated damages in an amount equal to the sum of back pay, plus interest, for Bottomline's bad-faith violation of the FMLA, attorneys' fees, expert witness fees, and costs of the action.

    Respectfully submitted,

    GEMMA WAITE, Plaintiff

    By Her Attorneys

    UPTON & HATFIELD, LLP

Date:  February 12, 2021    By: /s/ Lauren S. Irwin
    Lauren S. Irwin (NHBA #10544)
    Heather M. Burns (NHBA #8799)
    10 Centre Street, PO Box 1090
    Concord, NH  03302-1090
    (603) 224-7791
    lirwin@uptonhatfield.com

# EXHIBIT A

EEOC Form 161 (11/2020)      **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Gemma Waite<br>9 Squire Way<br>Exeter, NH 03833 | From: | Boston Area Office<br>John F. Kennedy Fed Bldg<br>15 New Sudbury Street, Room 475<br>Boston, MA 02203 |
|---|---|---|---|

[ ]    *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16D-2020-00175 | Amon L. Kinsey, Jr.,<br>Supervisory Investigator | (617) 865-3672 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]    The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]    Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]    The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]    Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ]    The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ]    The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X]    Other *(briefly state)*      **Charging Party is pursuing claims in another forum.**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____      February 5, 2021
Feng K. An,
Area Office Director      *(Date Issued)*

Enclosures(s)

cc:

BOTTOMLINE TECHNOLOGIES INC

c/o: Joshua Scott, Esq.
JACKSON LEWIS
100 International Drive, Suite 363
Portsmouth, NH 03801

Lauren S. Irwin, Esq.
UPTON & HATFIELD
PO Box 1090
Concord, NH 03302

# EXHIBIT B

STATE OF NEW HAMPSHIRE

ROCKINGHAM                                                    SUPERIOR COURT

Gemma Waite

v.

Bottomline Technologies (DE), Inc.

Case No. 218-2021-CV-00141

## PLAINTIFF'S CONSENT FORM

I hereby consent to make a claim under the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*, and RSA 275:37, to recover pay owed to me by my former employer, Bottomline Technologies (DE), Inc. ("Bottomline"). Bottomline willfully violated 29 U.S.C. 201 *et seq.* and RSA 275:37, by discriminating against me on the basis of sex when I was employed by Bottomline. If this case does not proceed collectively, I also consent to join any subsequent action to assert these claims. I understand that I may withdraw my consent to proceed with my claims at any time by notifying the attorneys handling the matter.

Date: 02/12/2021

_Gemma Waite_
Signature

Gemma Waite
Print Name